UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

SIERRA WINSTON,
and all others similarly situated;

     Plaintiffs,

vs.

EVER AND COMPANY, P.A.,
an active Florida corporation;
JUDAH EVER, individually; and
AARON EVER, individually;

     Defendants.

_____/

## **COMPLAINT**

Plaintiff, SIERRA WINSTON ("Plaintiff"), on behalf of herself and all others similarly situated, brings this individual and collective action for willful violations under the Fair Labor Standards Act, (hereinafter referred to as the "FLSA") against Defendants EVER AND COMPANY, P.A. ("EC"), JUDAH EVER ("JE"), individually; and AARON EVER ("AE"), individually. Additionally, on behalf of only herself, Plaintiff brings claims against AE, individually and EC pursuant to the Stored Communications Act (18 U.S.C. § 2701), seeking damages pursuant to 18 U.S.C. § 2707. Finally, on behalf of only herself only she brings claims for common law Defamation (Libel) Per Se and Invasion of Privacy against AE, individually and EC.

1

## INTRODUCTION

1.  Plaintiff is an accountant who worked for Defendant, EC from February 2018, until she voluntarily resigned her employment on July 22, 2019. A copy of her resignation letter is attached as Exhibit A.

2.  Plaintiff's last day of employment was August 7, 2019.

3.  After her resignation, Plaintiff learned that AE was, without authorization, continually accessing her personal emails contained in her personal Gmail account.[1]

4.  Additionally, and as is more detailed below, AE used the information gained from Plaintiff's personal Gmail account to harass, defame, intimidate and bully Plaintiff.

5.  Further, Plaintiff was not paid properly under the FLSA.

6.  Although Plaintiff worked as an accountant for EC (AE and JE are "Employers" as well, as that term is defined under the FLSA) Plaintiff was paid by the hour.

7.  Therefore, Plaintiff was a non-exempt employee.

8.  Other similarly situated accountants who worked for EC, AE and JE were also paid by the hour.

9.  Therefore, these other similarly situated accountants were non-exempt employees.

10.  As is described in more detail below, Plaintiff was not paid time and one half for all hours worked over forty (40) in a given work week.

11.  Similarly situated accountants were not paid time and one half for all hours worked over forty (40) in a given work week.

12.  Moreover, Plaintiff was not paid for all time worked.

13.  Instead, Plaintiff was only paid for billable time listed on a time sheet.

---

[1]  Plaintiff's personal email account at issue is sierra.winston@gmail.com and is referred to herein interchangeably as either "personal Gmail account" or "private Gmail account."

14.     Occasionally, Plaintiff would put non-billable time on her time sheet (to account for certain administrative functions).

15.     Plaintiff was paid for the non-billable time on her time sheet, but JE discouraged Plaintiff from listing non-billable time on her time sheet.

## JURISDICTION AND VENUE

16.     The FLSA authorizes court actions by private parties to recover damages of the FLSA's wage and hour provisions.

17.     18 U.S.C. § 2707, authorizes a party to bring a civil action to recover damages under the Stored Communications Act (18 U.S.C. § 2701) when the violation of the Stored Communications Act is done with a knowing or intentional state of mind.

18.     This Court has jurisdiction over Plaintiff's FLSA claims, and Plaintiff's claims under the Stored Communications Act (18 U.S.C. §§ 2701, 2707) pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

19.     This Court has jurisdiction over Plaintiff's defamation per se and invasion of privacy claims because those claims arise out of, are based on and are directly related to the same facts and circumstances (i.e. derive from a common nucleus of operative fact) that give rise to Plaintiff's claims under the Stored Communications Act (18 U.S.C. §§ 2701, 2707).

20.     Accordingly, the Court should exercise Pendent Jurisdiction over Plaintiff's defamation per se and invasion of privacy claims.

21.     Venue is proper in the Southern District of Florida because Defendant, EC provides services in, and has its principal place of business in this District and is thus considered a resident of this District. Additionally, all of the acts that form the basis of this action took place in this District. Finally, upon information and belief, Defendants AE and JE are residents of this District.

## PARTIES

22.     Plaintiff is an adult resident of Broward County, Florida.

23.     Defendant, EC is an active Florida corporation with its principal place of business located in Broward County, Florida.

24.     Defendant, AE is an individual who, upon information and belief, is a resident of Broward County, Florida.

25.     Defendant, JE is an individual who, upon information and belief, is a resident of Broward County, Florida.

## FACTS RELATING TO PLAINTIFF'S
## STORED COMMUNICATIONS ACT (18 U.S.C. §§ 2701, 2707),
## DEFAMATION PER SE AND INVASION OF PRIVACY CLAIMS

26.     On August 21, 2019, Defendant AE sent an email to a third party named Aaron Joseph Alamary ("Alamary"). A copy of the email is attached as Exhibit B.

27.     Therein, AE makes a number of false statements about Plaintiff.

28.     The false statements are as follows:

   i.     "Sierra Winston left our firm without notice to management." *See* Exh. B.

   ii.     "[Sierra] had agreed to stay on through October in follow up meetings with us." *Id.*

   iii.     "She said this to me personally." *Id.*

   iv.     "Sierra had agreed to work reduced hours along with off days while studying and taking CPA exams." *Id.*

   v.     "[S]he would not answer our questions regarding her work and would not return phone calls and emails to her personal account." *Id.*

   vi.     "She had billed time to clients of my firm Ever and Company for the time she spent during working hours on your tax return." *Id.*

4

vii.   "In trying to communicate with her after leaving[,] the emails and phone calls were not being returned[,] asking about our clients [sic] tax [returns] she was responsible for, leaving the firm without telling management of many clients." *Id.*

29.   Also notable is that in the email, AE states that: "I have the email sent to you for the $1,200.00 invoice in her name for her tax services dated 8/7/2019." *See* Exh. B.

30.   AE further states in the email that: "[w]e have time logs of her use of our computer software and emails between you and her during regular working hours from her desktop while at our office." *Id.*

31.   The emails referenced by AE in Exhibit B are all from Plaintiff's personal Gmail account.

32.   The only way AE could have obtained those emails was if he accessed and reviewed Plaintiff's personal Gmail account.

33.   Plaintiff never explicitly, implicitly, by action, inaction or any other manner authorized AE, or any other Defendant to access her personal Gmail account.

34.   Plaintiff's personal Gmail account was never utilized by anyone at EC for work purposes nor was it ever connected to EC in any manner.

35.   Plaintiff accessed her personal Gmail account through Google's website.

36.   Specifically, Plaintiff would, on occasion, go to Google's website on her work computer and then access her personal Gmail account via Google's online portal.

37.   In order to do that, Plaintiff would have to enter a password of which only she knew.

38.   After viewing her personal Gmail account, Plaintiff would log out of the Gmail account.

5

39.     Plaintiff took steps to ensure that her personal Gmail account was not accessed.

40.     Specifically, Plaintiff would routinely clear her browsing history at the end of her workday and would make sure to log out of her personal Gmail account.

**Plaintiff's Suspicions After Learning of the Defamatory (Libelous) August 21, 2019, Email**

41.     On or about August 21, 2019, Plaintiff became aware that AE had sent his defamatory (libelous) August 21, 2019, email that is attached as Exhibit B.

42.     At that point Plaintiff became concerned as to how, and for how long, AE had access to her personal Gmail account.

43.     Upon information and belief, regarding the length of time that AE was accessing Plaintiff's personal Gmail account, there is a reasonable basis to suspect that it was for an extended period of time, going back before August 21, 2019.

44.     Specifically, while Plaintiff was employed and even directly after her employment concluded, AE would send Plaintiff text messages indicating and or/implying that he knew when and where she was on trips, despite the fact that she had never told anyone at EC of her location and plans.

45.     Upon information and belief, since Plaintiff had not authorized any access of her personal Gmail account to AE, or anyone else, there is a reasonable basis to believe that AE installed software on Plaintiff's work computer that would allow AE to gain access to Plaintiff's personal Gmail account.

46.     To that end, at some point during here employment with EC (Plaintiff does not recall the exact time frame), Plaintiff changed her password to access her work computer.

47.     Thereafter, she was informed that IT personnel had to update all of the computers, and in the course of that update, Plaintiff's password to access her work computer was changed.

48.     Plaintiff inquired with other employees as to whether their passwords were changed and/or whether they were told of an update.

49.     As far as Plaintiff was aware, based on her inquiries, no one else had their password changed and no one else was told of an update.

**AE's Crusade Against Plaintiff**

50.     After confirming that AE had access to her personal Gmail account, Plaintiff retained undersigned counsel.

51.     On August 23, 2019, at 9:42 a.m., undersigned counsel sent a Demand Letter to Defendants. The Demand Letter contains, in part confidential settlement communications. Accordingly, a complete copy it is not attached herewith.

52.     Therein, undersigned counsel instructed Defendants to cease any communication with Plaintiff.

53.     On August 23, 2019, at 3:22 p.m., Defendant AE emailed Plaintiff. A partial copy of AE's email is attached as Exhibit C.[2]

54.     The email from AE to Plaintiff contains a GIF of Adam Sandler drooling milk and laughing. *See* Exh. C.

---

[2]     The attachment is a screenshot of the GIF portion of the email, which cannot be displayed in any other format. The complete text under the GIF is believed to be a copy of Defendant EC's email use policy. Additionally, AE attached a copy of Defendant EC's Employee Handbook. Notably, AE did not attach any document showing Plaintiff's receipt of the email use policy or Employee Handbook.

55.     Additionally, the subject line of the email is "lol" which is a commonly known acronym that stands for "laughing out loud." *See id.*

56.     The email also purports to contain a copy of EC's email use policy and EC's Employee Handbook.

57.     The clear implication from AE to Plaintiff is that her claims are a joke, and he does not take seriously, his unauthorized access of her personal Gmail account and his release of her private information to third parties.

58.     Thereafter, on August 23, 2019, at 4:21 p.m., Defendant AE continued his attacks on Plaintiff. This time, he sent ***another*** email to Plaintiff and Alamary and also included undersigned counsel on the same email. A copy of this email is attached as Exhibit D.

59.     Therein, AE again makes false statements about Plaintiff.

60.     The false statements are as follows:

i.     "Sierra Winston committed fraud."

ii.    "Sierra Winston … [lied] on her submitted time sheets for the dates 8/5/19 and 8/6/19."

61.     AE did not stop there, his obsession with Plaintiff continued.

62.     On August 28, 2019 (five days after receipt of the Demand Letter), Plaintiff received an email from Ashley Bordeaux, with the Florida Division of Certified Public Accounting. A copy of the email is attached as Exhibit E.

63.     In that email, Plaintiff was notified that AE had requested verification and release of Plaintiff's CPA exam scores to both himself and EC. *See* Exh. E.

64.     Attached to the email was a form that purported to be an authorization for release of exam scores. A copy of the supposed authorization is attached as Exhibit F.

65.   In the email, Ms. Bordeaux requests that Plaintiff confirm that she authorizes release of her exam scores to AE and EC. *See* Exh. E.

66.   Plaintiff responded that she did not authorize release of her scores and that her employment at EC ended on August 7, 2019.

67.   Moreover, Plaintiff does not recall executing the form attached as Exhibit F.

68.   Upon information and belief, the form attached as Exhibit F appears to be "doctored" and/or "manipulated" to look as though it was executed by Plaintiff.

69.   This is supported by the fact that Ms. Bordeaux emailed Plaintiff to verify Plaintiff's authorization.

70.   Upon information and belief, AE "doctored", "manipulated" and/or "forged" the form attached as Exhibit F so that he could obtain Plaintiff's CPA exam scores.

**FACTS RELATING TO PLAINTIFF'S CLAIMS UNDER THE FLSA**

71.   Defendant EC is a covered employer under the FLSA.

72.   During the three years preceding the filing of this lawsuit (the "Relevant Liability Period"), Defendant EC employed two or more persons, including Plaintiff, and "had employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any persons," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

73.   During the Relevant Liability Period, Defendant EC achieved annual gross sales made or business done of not less than $500,000.00, in accordance with U.S.C. § 203(s)(1)(A)(ii).

74.   Defendant JE is the sole corporate officer of EC.

75.   Defendant JE is an "Employer" as that term is defined by the FLSA insofar as he, in conjunction with his son/co-Defendant AE, exercises control of the business, makes day to

day decisions, has direct control of Plaintiff, set Plaintiff's hours, reviewed Plaintiff's work and could fire Plaintiff.

76.     Defendant AE is an "Employer" as that term is defined by the FLSA insofar as he, in conjunction with his father/co-Defendant JE, exercises control of the business, makes day to day decisions, has direct control of Plaintiff, set Plaintiff's hours, reviewed Plaintiff's work and could fire Plaintiff. Additionally, Defendant AE describes EC as "my firm" in Exhibit B.

77.     Plaintiff was a covered employee within the meaning of the FLSA during the Relevant Liability Period.

78.     During the Relevant Liability Period, Defendants failed to pay Plaintiff and similarly situated employees for all hours worked and overtime for all hours worked in excess of forty (40) in a given work week.

79.     Although Plaintiff is an accountant, and performed accounting duties while employed at EC, Plaintiff was treated as a non-exempt employee under the FLSA.

80.     Specifically, Plaintiff was paid by the hour or at a minimum, was not paid on a salary basis insofar as she was not guaranteed the same amount of pay each week.

81.     Accordingly, because she was not paid on a salary basis pursuant to the FLSA, Plaintiff does not qualify for any exemption under the FLSA.

82.     Defendants have a policy and practice of failing to pay Plaintiff and similarly situated employees for all hours worked and overtime compensation for all hours worked in excess of forty (40) in a given workweek.

83.     The FLSA portion of this lawsuit is brought as a collective action under the FLSA to recover payment for all hours worked and overtime compensation owed to Plaintiff and similarly situated employees.

84.     Plaintiff will seek conditional certification and notice to an opt-in class of Accountants at EC pursuant to the FLSA, 29 U.S.C. § 216(b), who were employed by Defendants during the Relevant Liability Period.

85.     During the Relevant Liability Period, Defendants have employed numerous Accountants, all of which upon information and belief were paid in the same manner as Plaintiff.

86.     Plaintiff, and those similarly situated, are non-exempt employees, and therefore entitled to additional compensation for all hours worked over forty (40) in a given work week.

87.     Defendants failed to pay Plaintiff and the putative class for all hours worked and overtime compensation for all hours worked in excess of forty (40) in a given work week.

88.     Instead of being paid for all hours worked, Plaintiff and all other similarly situated employees were/are only paid for billable hours and occasionally paid for non-billable hours listed on a time sheet (although Plaintiff and class members are discouraged from listing non-billable time).

89.     Defendants' policy of wrongfully denying Plaintiff, and the putative class' payment for all hours worked and overtime is companywide.

90.     Defendants knew, and have known, that Plaintiff and all similarly situated employees perform work without compensation and have chosen to deny them overtime and full wage compensation for performing this work in willful disregard of their rights under the FLSA.

## INDIVIDUAL CAUSES OF ACTION

## COUNT I

## DEFAMATION (LIBEL) PER SE

### *Against AE Individually*

91.     Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

92.     Count I is for Defamation (Libel) Per Se against Defendant AE, individually.

93.     This count is based on the August 21, 2019, email (because the false statements were published in writing this claim is Libel) attached as Exhibit B , which is Defamation (Libel) Per Se because it contains false statements that relate to and tend to injure Plaintiff in her profession.

94.     Specifically, the email is from Plaintiff's former supervisor and relates solely to Plaintiff's employment as an accountant.

95.     Accordingly, there is no question that the entire email, and all of the false statements therein, relate to Plaintiff's profession.

96.     Defendant AE is liable because he committed an intentional tort.

97.     Further, the email contains numerous false statements.

98.     The false statements are listed in Paragraph 25, sub-parts i-viii.

99.     The false statements are not privileged.

100.    The false statements were made in bad faith and with the purpose of harming Plaintiff.

101.    Specifically, Defendant AE told a third party about various issues he had with Plaintiff's employment and her resignation therefrom.

102.    The third party was not a prospective employer of Plaintiff and therefore, the only possible reason to comment on Plaintiff's resignation and issues related therewith would be to harm Plaintiff.

103.    Because this is claim for Libel Per Se, injury and actual damages are presumed at law and punitive damages can be awarded without having shown actual damages.

104.     Additionally, because this is an action for Libel Per Se, special damages need not be shown because malice is presented as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant AE and further requests that this Court:

a.     Award her special, compensatory and punitive damages;

b.     Award her presumed actual damages at law;

c.     Award her pre and post judgment interest; and

d.     Award her any other relief this Court deems just and appropriate.

## COUNT II

## DEFAMATION (LIBEL) PER SE

### *Against EC*

105.     Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

106.     Count II is for Defamation (Libel) Per Se against Defendant EC.

107.     This count is based on the August 21, 2019, email (because the false statements were published in writing this claim is Libel) attached as Exhibit B , which is Defamation (Libel) Per Se because it contains false statements that relate to and tend to injure Plaintiff in her profession.

108.     Specifically, the email is from Plaintiff's former employer and solely relates to Plaintiff's employment as an accountant.

109.     Accordingly, there is no question that the entire email, and all of the false statements therein, relate to Plaintiff's profession.

110.     The August 21, 2019, email is from AE, who, in the email claims that Defendant EC is his firm.

111.    Therefore, Defendant EC is vicariously liable for the conduct of AE.

112.    The email contains numerous false statements.

113.    The false statements are listed in Paragraph 25, sub-parts i-viii.

114.    The false statements are not privileged.

115.    The false statements were made in bad faith and with the purpose of harming Plaintiff.

116.    Specifically, Defendant AE, in his capacity as an employee of and/or owner of EC, told a third party about various issues he had with Plaintiff's employment and her resignation therefrom.

117.    The third party was not a prospective employer of Plaintiff and therefore, the only possible reason to comment on Plaintiff's resignation and issues related therewith would be to harm Plaintiff.

118.    Because this is claim for Libel Per Se, injury and actual damages are presumed at law and punitive damages can be awarded without having shown actual damages.

119.    Additionally, because this is an action for Libel Per Se, special damages need not be shown because malice is presented as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant EC and further requests that this Court:

a.    Award her special, compensatory and punitive damages;

b.    Award her presumed actual damages at law;

c.    Award her pre and post judgment interest; and

d.    Award her any other relief this Court deems just and appropriate.

## COUNT III

## DEFAMATION (LIBEL) PER SE

### *Against AE Individually*

120.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

121.    Count III is for Defamation (Libel) Per Se against Defendant AE, individually.

122.    This count is based on the August 23, 2019, email (because the false statements were published in writing this claim is Libel) attached as Exhibit D , which is Defamation (Libel) Per Se because it contains false statements that relate to and tend to injure Plaintiff in her profession.

123.    Specifically, the email is from Plaintiff's former supervisor and relates solely to Plaintiff's employment as an accountant.

124.    Accordingly, there is no question that the entire email, and all of the false statements therein, relate to Plaintiff's profession.

125.    Defendant AE is liable because he committed an intentional tort.

126.    Further, the email contains numerous false statements.

127.    The false statements are listed in Paragraph 57, sub-parts i-ii.

128.    The false statements are not privileged.

129.    The false statements were made in bad faith and with the purpose of harming Plaintiff.

130.    Specifically, Defendant AE told a third party that Plaintiff committed fraud and lied as concerns regarding matters relating to her employment.

131.    The third party was not a prospective employer of Plaintiff and therefore, the only possible reason to comment on Plaintiff's employment and issues related therewith would be to harm Plaintiff.

132.    Because this is claim for Libel Per Se, injury and actual damages are presumed at law and punitive damages can be awarded without having shown actual damages.

133.    Additionally, because this is an action for Libel Per Se, special damages need not be shown because malice is presented as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant AE and further requests that this Court:

a.      Award her special, compensatory and punitive damages;

b.      Award her presumed actual damages at law;

c.      Award her pre and post judgment interest; and

d.      Award her any other relief this Court deems just and appropriate.

## COUNT IV

## DEFAMATION (LIBEL) PER SE

### *Against EC*

134.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

135.    Count IV is for Defamation (Libel) Per Se against Defendant EC.

136.    This count is based on the August 23, 2019, email (because the false statements were published in writing this claim is Libel) attached as Exhibit D, which is Defamation (Libel) Per Se because it contains false statements that relate to and tend to injure Plaintiff in her profession.

137.    Specifically, the email is from Plaintiff's former employer and solely relates to Plaintiff's employment as an accountant.

138.    Accordingly, there is no question that the entire email, and all of the false statements therein, relate to Plaintiff's profession.

139.    The August 23, 2019, email is from AE, who, in another email which is attached as Exhibit B claims that Defendant EC is his firm.

140.    Therefore, Defendant EC is vicariously liable for the conduct of AE.

141.    The email contains numerous false statements.

142.    The false statements are listed in Paragraph 57, sub-parts i-ii.

143.    The false statements are not privileged.

144.    The false statements were made in bad faith and with the purpose of harming Plaintiff.

145.    Specifically, Defendant AE told a third party that Plaintiff committed fraud and lied as concerns regarding matters relating to her employment.

146.    The third party was not a prospective employer of Plaintiff and therefore, the only possible reason to comment on Plaintiff's employment and issues related therewith would be to harm Plaintiff.

147.    Because this is claim for Libel Per Se, injury and actual damages are presumed at law and punitive damages can be awarded without having shown actual damages.

148.    Additionally, because this is an action for Libel Per Se, special damages need not be shown because malice is presented as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant EC and further requests that this Court:

a.      Award her special, compensatory and punitive damages;

b.      Award her presumed actual damages at law;

c.      Award her pre and post judgment interest; and

d.      Award her any other relief this Court deems just and appropriate

### COUNT V

### INVASION OF PRIVACY
**(Intrusion electronically into one's private quarters)**

*Against AE*

149.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

150.    Count V is for Invasion of Privacy (intrusion electronically into one's private quarters) against Defendant AE.

151.    This count is based on Defendant AE's unauthorized interception/access of Plaintiff's private Gmail account.

152.    Defendant AE is liable individually because he committed an intentional tort.

153.    As stated above, Defendant AE accessed Plaintiff's personal Gmail account.

154.    Plaintiff never explicitly, implicitly, by action, inaction or any other manner authorized AE, or any other Defendant to access her personal Gmail account.

155.    Defendant AE knew that he was not authorized to access Plaintiff's personal Gmail account.

156.    Plaintiff has a reasonable expectation of privacy in her private Gmail account.

157.    Specifically, the Gmail account is not connected to any work-related account, is secured via a private password known only to Plaintiff and is accessed via a Google/Gmail web portal.

158.    Further, Plaintiff took steps to ensure that her account was not accessed by third parties.

159.    Specifically, after accessing her personal Gmail account, Plaintiff would clear her computer's browsing history and log out of the account.

160.    Accordingly, not only did Plaintiff have an expectation of privacy in her personal Gmail account, but Plaintiff took deliberate steps to protect that expectation of privacy.

161.    The unauthorized accessing of Plaintiff's personal Gmail account is highly offensive and would be considered highly offensive to a reasonable person.

162.    An employer's unauthorized access of an employee's personal email, as happened in this case, is considered a highly offensive intrusion.

163.    Plaintiff has been damaged by Defendant AE's conduct.

164.    Specifically, Plaintiff has suffered distress and humiliation due to Defendant AE's conduct.

WHEREFORE, Plaintiff demands judgment against Defendant AE and further requests that this Court:

a.    Award her actual, compensatory and punitive damages;

b.    Award her pre and post judgment interest; and

c.    Award her any other relief this Court deems just and appropriate.

### COUNT VI

### INVASION OF PRIVACY
**(Intrusion electronically into one's private quarters)**

*Against EC*

165.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

166.    Count VI is for Invasion of Privacy (intrusion electronically into one's private quarters) against Defendant EC.

167.    This count is based on Defendant AE's unauthorized interception/access of Plaintiff's private Gmail account.

168.    Defendant EC is vicariously liable for the conduct of AE because in an email attached as Exhibit B, Defendant AE claims that Defendant EC is his firm.

169.    As stated above, Defendant AE accessed Plaintiff's private Gmail account.

170.    Plaintiff never explicitly, implicitly, by action, inaction or any other manner authorized AE, or any other Defendant to access her personal Gmail account.

171.    Defendant AE knew that he was not authorized to access Plaintiff's personal Gmail account.

172.    Plaintiff has a reasonable expectation of privacy in her private Gmail account.

173.    Specifically, the email account is not connected to any work-related account, is secured via a private password known only to Plaintiff and is accessed via a Google/Gmail web portal.

174.    Further, Plaintiff took steps to ensure that her personal Gmail account was not accessed by third parties.

175.    Specifically, after accessing her personal Gmail account, Plaintiff would clear her computer's browsing history and log out of the account.

176.    Accordingly, not only did Plaintiff have an expectation of privacy in her personal Gmail account, but Plaintiff took deliberate steps to protect that expectation of privacy.

177.    The unauthorized accessing of Plaintiff's personal Gmail account is highly offensive and would be considered highly offensive to a reasonable person.

178.    An employer's unauthorized access of an employee's personal email, as happened in this case, is considered a highly offensive intrusion.

179.    Plaintiff has been damaged by Defendant AE's conduct.

180.    Specifically, Plaintiff has suffered distress and humiliation due to Defendant AE's conduct.

WHEREFORE, Plaintiff demands judgment against Defendant EC and further requests that this Court:

a.      Award her actual, compensatory and punitive damages;

b.      Award her pre and post judgment interest; and

c.      Award her any other relief this Court deems just and appropriate.

## COUNT VII

## VIOLATION OF THE STORED COMMUNICATIONS ACT 18 U.S.C. § 2701

## CIVIL ACTION PURSUANT TO 18 U.S.C. § 2707

### *Against AE*

181.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

182.    Count VII is a Civil Action pursuant to 18 U.S.C. § 2707, for violation of 18 U.S.C. § 2701, The Stored Communications Act ("SCA").

183.    This count is based on Defendant AE's knowing and intentional access of Plaintiff's private Gmail account which was done without authorization. To the extent there was authorization for access to Plaintiff's work computer, Defendant AE exceeded his authorization by accessing, looking at, reading, and/or disseminating to third parties, information in Plaintiff's private Gmail account.

184.    AE's accessing of Plaintiff's private Gmail account intentionally and without authorization and/or exceeding authorization constitutes accessing a facility through which an electronic communication service is provided within the meaning of the SCA.

185.    Additionally, AE's accessing of Plaintiff's private Gmail account intentionally and without authorization constitutes obtaining access to a wire or electronic communication while it is in electronic storage in such system within the meaning of the SCA.

186.    Defendant AE is liable individually because he committed an intentional act.

187.    Plaintiff never explicitly, implicitly, by action, inaction or any other manner authorized AE, or any other Defendant to access her personal Gmail account.

188.    Defendant AE knew that he was not authorized to access Plaintiff's personal Gmail account.

189.    The private Gmail account is not connected to any work-related account, is secured via a private password known only to Plaintiff and is accessed via a Gmail web portal.

190.    Therefore, Defendant AE knew that this was a private, personal email account and he was therefore prohibited from accessing same.

191.    Further, Plaintiff took steps to ensure that her private Gmail account was not accessed by third parties.

192.    Specifically, after accessing her private Gmail account, Plaintiff would clear her computer's browsing history and log out of the account.

193.    Plaintiff has suffered actual damages due to Defendant AE's conduct.

194.    Plaintiff has suffered distress and humiliation due to Defendant AE's conduct.

195.    Plaintiff is entitled to an award of reasonable attorney's fees and other litigation costs Pursuant to 18 U.S.C. § 2707(b)(3).

WHEREFORE, Plaintiff demands judgment against Defendant AE and, because AE's actions were done with a knowing or intentional state of mind further requests that this Court:

a.    Award her such preliminary and other equitable relief as may be appropriate pursuant to 18 U.S.C. § 2707(b)(1);

b.    Award her actual damages pursuant to 18 U.S.C. § 2707(c);

c.    Award her punitive damages pursuant to 18 U.S.C. § 2707(c);

d.    Award her pre and post judgment interest; and

e.    Award her any other relief this Court deems just and appropriate.

## COUNT VIII

## VIOLATION OF THE STORED COMMUNICATIONS ACT 18 U.S.C. § 2701

## CIVIL ACTION PURSUANT TO 18 U.S.C. § 2707

### *Against EC*

196.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-4; 17-70.

197.    Count VIII is a Civil Action pursuant to 18 U.S.C. § 2707, for violation of 18 U.S.C. § 2701, The Stored Communications Act ("SCA").

198.    This count is based on Defendant AE's knowing and intentional access of Plaintiff's private Gmail account which was done without authorization. To the extent there was authorization for access to Plaintiff's work computer, Defendant AE exceeded his authorization by accessing, looking at, reading, and/or disseminating to third parties, information in Plaintiff's private Gmail account.

199.    Defendant EC is vicariously liable for the conduct of AE because in an email attached as Exhibit B, Defendant AE claims that Defendant EC is his firm.

200.    AE's accessing of Plaintiff's private Gmail account intentionally and without authorization and/or exceeding authorization constitutes accessing a facility through which an electronic communication service is provided within the meaning of the SCA.

201.    Additionally, AE's accessing of Plaintiff's private Gmail account intentionally and without authorization constitutes obtaining access to a wire or electronic communication while it is in electronic storage in such system within the meaning of the SCA.

202.    Plaintiff never explicitly, implicitly, by action, inaction or any other manner authorized AE, or any other Defendant to access her personal Gmail account.

203.    Defendant AE knew that he was not authorized to access Plaintiff's personal Gmail account.

204.    The private Gmail account is not connected to any work-related account, is secured via a private password known only to Plaintiff and is accessed via a Gmail web portal.

205.    Therefore, Defendant AE knew that this was a private, personal email account and he was therefore prohibited from accessing same.

206.    Further, Plaintiff took steps to ensure that her private Gmail account was not accessed by third parties.

207.    Specifically, after accessing her private Gmail account, Plaintiff would clear her computer's browsing history and log out of the account.

208.    Plaintiff has suffered actual damages due to Defendant AE's conduct.

209.    Plaintiff has suffered distress and humiliation due to Defendant AE's conduct.

210.    Plaintiff is entitled to an award of reasonable attorney's fees and other litigation costs Pursuant to 18 U.S.C. § 2707(b)(3).

WHEREFORE, Plaintiff demands judgment against Defendant EC and, because AE's actions, for which EC is vicariously liable, were done with a knowing or intentional state of mind further requests that this Court:

a.   Award her such preliminary and other equitable relief as may be appropriate pursuant to 18 U.S.C. § 2707(b)(1);

b.   Award her actual damages pursuant to 18 U.S.C. § 2707(c);

c.   Award her punitive damages pursuant to 18 U.S.C. § 2707(c);

d.   Award her pre and post judgment interest; and

e.   Award her any other relief this Court deems just and appropriate.

## COLLECTIVE ACTION ALLEGATIONS

211.   Plaintiff incorporates, as if fully set forth herein, paragraphs 1-2, 5-16, 18, 21-25, 71-90.

212.   Plaintiff brings Counts IX and X (both below) as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following:

All persons employed as Accountants.

213.   Plaintiff reserves the right to amend said class definition consistent with information obtained through discovery.

214.   The class is so numerous that joinder of all members is impracticable. Plaintiff has executed a Consent to Become Party Plaintiff which is attached as Exhibit E.

215.   The FLSA claim may be pursued by those who opt-in to this case.

216.   The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiffs may be determined from the records of Defendants, and potential class members may easily and quickly be notified of the pendency of this action.

## COUNT IX

### FAILURE TO PAY OVERTIME COMPENSATION TO ACCOUNTANTS IN VIOLATION OF THE FLSA DURING THE RELEVANT LIABILITY PERIOD

### *Against All Defendants*

217.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-2, 5-16, 18, 21-25, 71-90, 211-216.

218.    This Count is against all Defendants.

219.    During the FLSA Relevant Liability Period, Defendants failed to properly compensate all Accountants by failing to properly pay overtime for all hours worked in excess of forty (40) hours in a given work week.

220.    Defendants paid all Accountants in the same manner they paid Plaintiff.

221.    Defendants' actions were willful.

222.    Plaintiff, on behalf of herself and other similarly situated employees, seeks unpaid overtime compensation in amounts to be determined, as well as an equal amount of liquidated damages (or pre-judgment interest in the event liquidated damages are denied), post-judgment interest, and attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated employees demands judgment against Defendants and requests that this Court:

a.    Issue a notice to all Accountants who were employed by Defendants at any time during the Relevant Liability Period, informing them of their right to file consents to join this action;

b.    Find that Defendants' violations of the FLSA were willful and impose a three (3) year statute of limitations period for FLSA claims;

c.    Award Plaintiff and all other similarly situated employees unpaid overtime;

d.      Award Plaintiff and all other similarly situated employees liquidated damages;

e.      Award Plaintiff and all other similarly situated employees post judgment interest;

f.      Award Plaintiff and all other similarly situated employees attorney's fees and costs; and

g.      Award Plaintiff and all other similarly situated employees any other relief this Court deems just and appropriate.

## COUNT X

**FAILURE TO PAY MINIMUM WAGE COMPENSATION TO ACCOUNTANTS IN VIOLATION OF THE FLSA DURING THE RELEVANT LIABILITY PERIOD**

### *Against All Defendants*

223.    Plaintiff incorporates, as if fully set forth herein, paragraphs 1-2, 5-16, 18, 21-25, 71-90, 211-216.

224.    This Count is against all Defendants.

225.    During the FLSA Relevant Liability Period, Defendants failed to properly compensate all Accountants by failing to properly pay minimum wage for all hours worked in a given work week.

226.    Defendants' actions were willful.

227.    Plaintiff, on behalf of herself and other similarly situated employees, seeks unpaid minimum wage compensation in amounts to be determined, as well as an equal amount of liquidated damages (or pre-judgment interest in the even liquidated damages are denied), post-judgment interest, and attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated employees demands judgment against Defendants and requests that this Court:

a.      Issue a notice to all Accountants who were employed by Defendants at any time during the Relevant Liability Period, informing them of their right to file consents to join this action;

b.      Find that Defendants' violations of the FLSA were willful and impose a three (3) year statute of limitations period for FLSA claims;

c.      Award Plaintiff and all other similarly situated employees unpaid minimum wage;

d.      Award Plaintiff and all other similarly situated employees liquidated damages;

e.      Award Plaintiff and all other similarly situated employees post judgment interest;

f.      Award Plaintiff and all other similarly situated employees attorney's fees and costs; and

g.      Award Plaintiff and all other similarly situated employees any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, on behalf of herself and similarly situated employees, demands a trial by jury on all FLSA claims. Plaintiff, individually, demands a trial by jury on all other claims herein.

Dated: October 11, 2019,

Respectfully submitted,

By: /s/*Michael L. Elkins*
      Michael L. Elkins
      Florida Bar No. 523781
      melkins@mlelawfirm.com
      **MLE LAW**
      633 S. Andrews Ave.
      Suite 500
      Fort Lauderdale, FL 33301
      Telephone: (954) 401-2608
      *Co-Counsel for Plaintiff*

/s/*Joshua M. Entin*

Joshua M. Entin, Esq.
Fla. Bar No. 493724
josh@entinlaw.com
**ENTIN LAW GROUP, P.A.**
633 S. Andrews Ave.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 761-7201
*Co-Counsel for Plaintiff*